IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NATHANIEL A. STRAND, #242-431        :

    Plaintiff                                            :

v.                                                          :        Civil Action No. AW-09-1430

CORRECTIONAL MEDICAL SERVICES    :
INC.
    Defendant

## MEMORANDUM

On May 29, 2009, Nathaniel A. Strand, presently incarcerated at Jessup Correctional Institution (JCI), filed a civil rights complaint filed pursuant to 42 U.S.C. § 1983 seeking compensatory and punitive damages, a hearing, and "a complete physical independent of [the Division of Correction]." Distilled to its basic element, Strand complains that his health has been jeopardized because prison health care providers knew he tested positive for the Hepatitis C virus [HVC] in 1995, but failed to disclose the diagnosis to him until September of 2008, causing a delay in treatment. Defendant Correctional Medical Services, Inc. (CMS)[1] has filed a motion to dismiss or, in the alternative, for summary judgment (Document 8), which Strand has opposed. Document 12. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2009). For the reasons stated below, the dispositive motions filed by CMS, treated as a motion for summary judgment, will be granted.

### Standard of Review

Federal Rule of Civil Procedure 56(c) provides that:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

---

[1] Joseph Johnston has moved to withdraw as attorney for Defendant. Paper No. 40. The motion shall be granted.

a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

Plaintiff's allegation against CMS is based solely upon vicarious liability, otherwise known as the doctrine of respondeat superior.  The law in the Fourth Circuit is well established that the doctrine does not apply in §1983 claims, even where the defendant is a private corporation, rather than a municipality or other public agency.  *See Love-Lane v. Martin*, 355 F.

3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under §1983); *Nedd v. Correctional Medical Services*, Civil Action No. JFM-92-1524 (D.Md., October 22, 1992), *citing Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *McIlwain v. Prince William Hospital*, 774 F.Supp. 986, 990 (E.D.Va. 1991). CMS is entitled to dismissal in this case. The Court's inquiry, however, does not end there.

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.[2] *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). To state an Eighth Amendment claim for denial of medical care, Plaintiff must demonstrate that the actions of Defendant (or a failure to act) amounted to deliberate indifference to a serious medical need.[3] *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (no expectation that prisoners will be provided with unqualified access to health care). Strand complains that he was denied treatment despite a diagnosis – unknown to him -- of infection with HCV.[4] There is no doubt that HCV is a serious medical

---

[2] Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003), citing *Wilson v. Seiter,* 501 U.S.294, 297 (1991).

[3] To the extent Strand seeks damages against unnamed medical personnel for a state law malpractice claim based on plaintiff's claim of non-disclosure, such a claim would be subject to exhaustion of administrative review before the Maryland Health Claims Arbitration Board. *See generally* Md. Code Ann., Cts & Jud. Proc., §3-2A-01 *et seq.* As the civil rights aspect of Strand's case cannot prevail, the undersigned declines to exercise supplemental jurisdiction with regard to any medical malpractice claim.

[4] On August 22, 2006, Strand also tested positive for Hepatitis A and B. While Hepatitis B can become a chronic

condition that can lead to serious consequences in a portion of those infected. From previous litigation in this district, the undersigned knows that HCV is a disease of the liver passed through infected blood or blood products that may become a chronic condition causing scarring of the liver. Minor scarring (fibrosis) may occur, or more damaging scarring, known as cirrhosis, may result. Some patients with cirrhosis develop liver failure or other complications.[5] *See Freeman v. The Medical Department for RCIH*, Document 8, Declaration of Dr. Jeffrey A. Briggs, Affidavit at 2-3, para. 4.

Proof of an objectively serious medical condition, however, does not establish liability. The second component of proof requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839– 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), quoting *Farmer,* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be

---

condition, *see* National Digestive Diseases Information Clearinghouse, http://digestuve,niddk.nih.gov/ddiseases/pubs/hepb_ez/ , Hepatitis A is an acute illness that does not develop into a chronic form of liver infection and requires no treatment.
*See* http://digestive.niddk.nih.gov/ddiseases/pubs/hepa_ez. Strand does not complain that the results of the August 22, 2006 testing were not made available to him. Furthermore, his medical record reveals that he had three doses of the Hepatitis B vaccine given in 2004. Document 8-4 at 2.

[5] Treatment consists of a combination of two antiviral medications, interferon and ribavirin, or the use of interferon alone, and is recommended for those with chronic HCV who exhibit at least moderate liver inflammation and necrosis, and treatment itself may produce poor results and substantial side effects. *Id*., Briggs Affidavit at 3-4, para. 5-6. In determining whether a prisoner should undergo antiviral therapy, medical personnel consider the severity of liver disease, the potential for adverse reactions, and – because the treatment takes time -- the length of the prisoner's incarceration. *Id*., Briggs Affidavit at 3-4, para. 5.

judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris* 240 F. 3d 383 (4th Cir. 2001), citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

The uncontroverted record shows that in 1995, prison medical personnel noted Strand's history of substance abuse, panic disorder, hypothyroidism, asthma that had resolved, and blood work that revealed the presence of the HVC antibody. Document 8-4 at 2. Medical records reveal a diagnosis of HVC on March 30, 1995. *Id*. Because of this diagnosis, Strand was tested and monitored on May 30, 1997 and September 9, 1999. Results showed normal values, indicating no damage had occurred to Strand's liver as a result of HCV. *Id*. at 3-4.

During Strand's August 22, 2006, annual physical examination, a nurse practitioner noted in the chart that Strand had previously tested positive for Hepatitis A, B and C. Document 8-4 at 7. On April 30, 2007, blood tests revealed a slightly elevated aminotransferase (ALT) level.[6] Additional testing confirmed that Strand had HVC. *Id*. at 8-10.

On April 11, 2008, Strand refused to allow blood to be taken for testing. The form, signed by Strand, notes that blood was to be drawn to test lipids, thyroid function, and Hepatitis B and C. *Id*. at 12. On May 19, 2008, a physician ordered these tests, plus HVC genotyping tests, be performed. The blood was to be taken on June 19, 2008. *Id*. at 13. Before the tests were performed, Strand was transferred from Roxbury Correctional Institution to his present place of confinement, JCI. Document 8-3 at 4, para. 10.

On August 15, 2008, Dr. Motti Mulleta ordered blood tests to determine Strang's HCV viral load (the amount of virus per cubic centimeter of blood) and to test liver functions. The tests were done the same day. Document 8-4 at 14-16. On September 8, 2008, Dr. Mulleta met with Strand to discuss HCV treatment. Strand signed the HCV Informed Consent Sheet

---

[6] ALT is an enzyme released into the bloodstream as the result of liver damage. Document 8-3 at 4 n.1.

indicating he understood treatment options but declined to consent to treatment. *Id*. at 17-18. Although Strand is eligible for further testing to see if he meets the criteria to receive antiviral therapy, he has continued to refuse such treatment. *Id*. at 19.

CMS personnel state that it is not the policy to withhold a prisoner's HVC status from him. Document 8-3 at 6, para. 16. Even if the court accepts as true Strand's claim that he was never told he was HVC-positive until September of 2008, it is evident that Strand has suffered no injury as a result of his purported ignorance. Strand has been challenged to come forward with evidence, *i.e.* records and/or declarations, to prove both components of the Eighth Amendment standard noted above. The medical records do not demonstrate that Strand has sustained significant liver damage. Furthermore, once informed on the record of his HVC status and options for treatment, Strand refused to pursue any treatment options. His health status will continue to be monitored and he is free to pursue treatment options at a later date.[7] Nothing more is constitutionally required.

CMS's dispositive motion is granted. A separate order follows.


Date: January 19, 2010               _____/s/_____
                                     Alexander Williams, Jr.
                                     United States District Judge

---

[7] Strand's request for treatment outside the prison system is denied.

6